MANASSEH BRIGGS *et al.*, Respondents, *against* CHARLES M. CORNWELL, Appellant.

(Decided January 3d, 1881.)

In an action by judgment creditors of a corporation, the capital stock of which had not been fully paid in, against one of the stockholders, upon his statutory liability for debts of the corporation, it appeared that the defendant had received his stock in consideration of the transfer by him to the corporation of his interest in a certain franchise ; that the stock was transferred to him upon the books of the corporation ; and that he received a certificate of stock, gave a receipt for it, and still held it when the action was brought. *Held,* that it was no defense that he was induced to take the stock by false and fraudulent representations to him by the president of the corporation, that the stock was full-paid capital stock, upon which there was no liability of the stockholders.

The defendant was the holder of certain bonds, bearing an indorsement by the president of the company, purporting to be a guaranty by the com-

Briggs *v.* Cornwell.

pany of their payment, and of certain promissory notes of the company, payable on demand, together amounting to more than the stock held by him, all of which had been acquired by him after the company had become insolvent, and but a short time before the action was brought. The original consideration for the bonds, or the consideration for the guaranty of them by the company, or for its notes, was not shown ; and the guaranty of the bonds purported to have been made before the incorporation of the company was completed, and no subsequent ratification of it by the corporation was proved. What the defendant paid, if anything, for the bonds and notes did not appear ; but the previous holder of them had charged them on his books to the account of profit and loss. *Held*, that, as against the plaintiffs, suing on a judgment recovered by them against the company for goods sold and delivered, the possession of the bonds and notes obtained under these circumstances did not constitute a defense such as might have been established under the equitable construction of the statute, by the defendant showing that he also had delivered goods to the corporation, or advanced money to it, or incurred obligations for it, or paid its debts, in either case, to an amount equal to the stock held by him.

APPEAL from an order of the general term of the marine court of the city of New York, reversing a judgment of that court entered upon the report of a referee, and granting a new trial.

The action was brought upon a judgment recovered by the plaintiffs against a corporation of which the defendant was a stockholder, and the capital stock of which had not been fully paid in. The facts are stated in the opinions. Upon trial before a referee, he found for the defendant, and judgment for the defendant was entered upon his report. From the judgment the plaintiff appealed to the general term of the marine court, which reversed the judgment and granted a new trial. From the order entered on this decision, the defendant appealed to this court.

*John A. Bryan*, for appellant.

*L. B. Bunnell*, for respondent.

CHARLES P. DALY, Chief Justice.—The evidence shows that the defendant became a stockholder. He received, in

consideration of the transfer to the " Citizens' Gas Light Company of Long Island City," of his interest in a franchise for laying down gas pipes in Long Island City, twenty shares of that company's stock. The shares were duly transferred to him upon the books of the company ; he received the certificate of the stock, gave a receipt for it, and still held it when this action was brought. Having thus become a stockholder, the liability imposed by the statute was created, and it is no answer to an action to enforce that liability, that he was induced to become a stockholder through false and fraudulent representations to him, by the president of the company, that the stock was "full-paid capital stock, upon which there was no liability of the stockholders."

The question is not a new one. It was fully considered in respect to an analogous liability in *Oakes* v. *Turquand* (E. L. R. 2 H. of L. 325), the decision in which is succinctly stated by Vice-Chancellor MALINS in Pugh and Shearman's case (E. L. R. 13 Eq. 572), as follows: that where a man has become a stockholder, no misconduct of the company, or false representation made by them, to induce him to take shares, will release him from bearing the responsibility which he owes to creditors, whatever effect it may have between himself and other creditors, which is the present case ; and a like decision was rendered in two other cases (*Henderson* v. *Royal British Bank*, 7 El. & Bl. 356 ; *Powis* v. *Harding*, 1 Com. B. N. S. 533).

In the case of *The Empire City Bank* (6 Abb. Pr. 402), where the defense to the personal liability of stockholders was that the stock was transferred to them by the directors of the bank, with intent to defraud them, the directors knowing that the bank was then insolvent, Judge MITCHELL held that whatever right the proof of such facts might give the stockholders to rescind their contract as between them and the parties who sold them the stocks, it gave them no such right as against the creditors of the bank ; and in *The Matter of the Reciprocity Bank* (22 N. Y. 17), Chief Justice COMSTOCK said: " A person may show, in exoneration of himself, that his name was placed on the books of the bank without his authority ; but if a party

makes an actual purchase of shares, whether from the corpora-
tion or an individual stockholder, and voluntarily allows him-
self to be represented to the world as a stockholder, he must
take the responsibility of the situation; equities may exist
between him and other parties, but the statute has no regard
for such questions.    He cannot disown the ownership when
it ceases to be a benefit and becomes a burden.    And to the
same general effect see *Ruggles* v. *Brock* (6 Hun, 164); *Ellis*
v. *Schmoeck* (5 Bing. 521); *Spear* v. *Crawford* (14 Wend. 24,
25).    When a person has, through fraudulent representations
of the seller of the stock or of the company, become a stock-
holder in a corporation where a personal liability to creditors
may, by statute, arise, he can, in the appropriate action, after
tendering the stock to the person or company who fraudu-
lently induced him to buy it, and demanding back what he
gave for it, be reimbursed for any loss or damage he has sus-
tained, and be relieved thereafter from any further liability as
a stockholder; but whilst he continues to be a stockholder his
liability, under the statute, to creditors, continues ( *Wright's
case,* E. L. R. 12 Eq. 351; *Henderson* v. *Royal British Bank,*
*supra; Ellis* v. *Schmoeck, supra*).  The contract by which the
defendant became a stockholder, if he was induced to enter
into it through fraudulent representations, was not void, but
merely voidable (*Oakes* v. *Turquand, supra,* pp. 345, 346).
Until it was avoided by some act on his part, or adjudged void
in a judicial proceeding, he was entitled to whatever benefits
or advantages might accrue to him as a holder of the stock
( *Wright's case, supra,* p. 351; *Clarke* v. *Dickson,* 1 El. Bl. &
El. 148) ; and it makes no difference that he did not know that
the representation made to him was fraudulent until after the
company had become insolvent ( *Wright's case, supra; Clarke*
v. *Dickson, supra,* 148).   In becoming a stockholder, he must
be held to the knowledge that by the law he would be liable
for the debts of the company until a verified certificate that
the capital had been paid in was recorded in the office of the
county clerk.    Whether such a certificate had been recorded
or not, could have been ascertained by a simple inquiry at the
office of the county clerk; and if he desired to avoid the

liability imposed by the statute, it was incumbent upon him to make that inquiry before he became a stockholder (*Upton* v. *Tribilcock*, 1 Otto [U. S.] 54 ; *Peel's case*, E. L. R. 2 Ch. 684 ; *Kincaid's case*, Id. 426, 527 ; *Powis* v. *Harding*, 1 Com. B. N. S. 533, 542 ; *Henderson* v. *Royal British Bank*, 7 El. & Bl. 363, 364).

If the defendant had paid debts of the company, or advanced money to it, for the payment of its debts, or incurred obligations for it, in either instance, to the amount of his stock, it would have been a complete defense to this action (*Agate* v. *Sands*, 8 Daly, 66 ; 73 N. Y. 620 ; *Mathez* v. *Neidig*, 72 N. Y. 100). This is not a direct provision of the statute, but an equitable construction put upon it, on the assumption that it was not the design of the framers of it that a stockholder who was a creditor of the company to the full amount of his stock, should be individually liable to another creditor, as he stands upon the same ground, and is entitled to claim under the act, equally with the creditor who is not a stockholder (*Briggs* v. *Penniman*, 8 Cow. 392, 393 ; *Garrison* v. *Howe*, 17 N. Y. 458 ; *Tallmadge* v. *The Fishkill Iron Co.*, 4 Barb. 389, 390, 391, 392 ; *Bank of Poughkeepsie* v. *Ibbotson*, 24 Wend. 473).

But it was not shown that the defendant had paid debts of the company, or advanced money to it, for that purpose, or incurred any charge or obligation for it. All that appeared was that he was the holder of two coupon bonds for $1,000 each, of the Long Island Gas Light Company, which, by an indorsement upon them, in the handwriting of the president of the Citizens' Gas Light Company of Long Island City, purported to have been guaranteed by the latter company, and two promissory notes of the Citizens' Gas Light Company of Long Island City, dated February 10 and March 10, 1876, payable on demand, for $303 and $305, which bonds and notes were received by the defendant on the 1st of February, 1879, a short time before this action was brought.

It appears, on the face of the bonds, that they were issued in pursuance of an act of the legislature, for the extension and improvement of the works of the company, by which they were made ; but upon what consideration, or why the payment

of them was guaranteed by the Citizens' Gas Light Company of Long Island City, does not appear. All that appears is a statement that they were taken by one T. Rowland, in satisfaction of a claim which he had, for work done by him, in 1874, *either* for the Citizens' Gas Light Company of Long Island City or *one of its predecessors:* that they were renewals of former notes; and that, when received by defendant, they had been charged in Rowland's books, together with the two notes, to profit and loss. What the defendant paid Rowland for these bonds and notes, or whether he paid anything for them, was not shown. Rowland had undoubtedly a right to give them to the plaintiff, and if it had been shown that they were for debts due by the company to Rowland, it might possibly be, although upon that point I express no opinion, that they would be available to the defendant as a defense to this action; but there was no evidence to establish this.

Even the guaranteeing of the bonds by the company was not proved. All that appears on that head is an indorsement on each bond by the president of the company, that the payment of it was guaranteed by the company, in accordance with a resolution of the board of directors, passed March 29, 1875. The authority of the president of a corporation to guarantee the payment of the bonds of another company may be implied from facts and circumstances which are given in evidence (*Conover* v. *The Mutual Insurance Company,* 1 N. Y. [1 Comst.] 290; *Clark* v. *Farmers' Woolen Manuf. Co.,* 15 Wend. 255); but nothing was given in evidence here but the bonds, with the indorsement upon them, in the president's handwriting, that the payment of them was guaranteed by a resolution of the board of directors, passed on the 29th day of March, 1875, which was not true, for the Citizens' Gas Light Company of Long Island City, by which they purported to have been guaranteed, was not then incorporated. The indorsement bears date the 29th of March, 1875; and the certificate of the incorporation of the company was not filed in the county clerk's office until the 1st of April following. Such a corporation is not created until the certificate provided for by law has been filed in the manner directed by the act (Laws

of 1848, ch. 40, §§ 1, 2). Even the certificate had not been signed by the persons to be incorporated as the Citizens' Gas Light Company of Long Island City, when this indorsement was made. The statement, therefore, in it, by E. B. Litchfield, signing himself president of the Citizens' Gas Light Company of Long Island City, that a resolution of the board of directors had been passed, guaranteeing the payment of these bonds, was untrue, for no such resolution had been or could be passed, as there was no board of directors, nor any such corporation then in existence. Even the name in the indorsement is not the correct name of the body that was subsequently incorporated and contracted the debt for which the plaintiff obtained a judgment against it.

An attempt was made to show that although the corporation was not in existence when this guarantee was given, it adopted the guarantee when subsequently a corporation, by paying coupons of bonds made by the Long Island Gas Company. The defendant was allowed to show entries in a cash-book of several payments of coupons of bonds of that company. The plaintiffs objected that there was no evidence that the cash-book produced was a book of the company, or that it was a book of original entries ; or that it was correct ; and generally, that what was contained in it was irrelevant and improper. The book was produced by a clerk of the attorney of the receiver of the company, the attorney himself being too sick to attend before the referee, the receiver being dead. The clerk was sent by the attorney with the books, but did not know himself whether the books he produced—a ledger, cash-book and journal—had ever been consulted, or referred to, as the books of the company, never having seen any one refer to them.

It will not be necessary to consider whether this was sufficient to allow the entries of these payments to be given in evidence, or whether, if receivable, they would constitute any evidence that the payment of these two particular bonds had been guaranteed by the Citizens' Gas Light Company of Long Island City, after that company had been incorporated, as the difficulty still remains, that there is no evidence showing why, or upon what consideration, they agreed to guarantee the pay-

ment of the bonds of another corporation. The witness was unable to say whether these bonds were given for work done for the Citizens' Gas Light Company of Long Island City, or for one of its predecessors. It is very plain that it was not done for that company, for the work for which they were given was done in 1874, as Tibbets testified, and the Citizens' Gas Light Company of Long Island City was not then created. It was incorporated on the 2d of April, 1875, when the duplicate certificate was filed in the office of the secretary of state. There may have been a previous company called the Citizens' Gas Light Company of Long Island City, which is the name given in the indorsement upon the bonds; but work done for such a company, or the guarantee of such a company, could impose no obligation upon a corporation that was not then in existence. It may have been that the work was done for the Long Island Gas Light Company, by whom the bonds were made; that the Citizens' Gas Light Company of Long Island City succeeded to that company and had the benefit of the work, in consideration of which it guaranteed the bonds that had been given in payment for it; but this was not shown; nor did it appear, from anything in the case, why the Citizens' Gas Light Company of Long Island City should, if that company did, guarantee the payment of these two bonds.

The defense set up by the defendant being one of an equitable character, to which the maxim, equality is equity, especially applies, it was essential to the making out of such a defense for the defendant to establish that he and the creditor by whom he was sued stood upon an equality; that is, where the plaintiff proves, as he did in this case, that he recovered a judgment againt the company for goods sold and delivered to it, the defendant "stands upon the same ground," to use the phrase of WOODWORTH, J., in *Briggs* v. *Pemberton* (*supra*), where this equitable defense was first recognized and enforced, if he shows that he also delivered goods to it, or advanced money to it, or incurred obligations for it, or paid its debts, in either case, to an amount equal to the stock held by him; but this does not appear by simply showing that, long after the company became insolvent, and after it had passed into the

hands of a receiver, the defendant became possessed of two promissory notes made by it, which were then nearly three years past due, and two bonds, the payment of which is assumed to have been guaranteed by it, which bonds and notes were evidently regarded by the person from whom the defendant received them as practically worthless, as he had then charged them in his books to the account of profit and loss. To place the defendant upon an equality with the plaintiff, the defendant would either have to show that he gave for these bonds and notes an amount equal to the stock held by him or to the plaintiff's claim ; or that the notes were made by the company, and the bonds guaranteed by it, for a consideration received by it, which was equal in amount to the defendant's stock. How far the proof of such facts would make out an equitable defense to this action, it is not now necessary for the court to determine. It is sufficient to hold that an equitable defense was not made out by the evidence given, and that the decision of the general term of the marine court, reversing the judgment dismissing the complaint, and granting a new trial, was right, and should be affirmed.

VAN HOESEN, J.—I concur with the chief justice in the opinion that the defendant is liable, even though he were induced by fraud to become a shareholder in the company. The authorities cited are conclusive upon that point.

I am furthermore of opinion that the defendant did not free himself from liability to the creditors of the company, when, after it had become insolvent, he succeeded in getting possession of some of its notes and obligations. I am not prepared to apprise the stockholders of bubble companies, whose capital stock is not paid in, that they may escape liability to the creditors of the companies by buying up the worthless paper which the companies have set afloat, and using it as an offset to the claims of those creditors. The unpaid subscriptions to the capital stock of a company constitute a trust fund for the payment of creditors. Those subscriptions must be paid into the company's treasury, or be used in paying valid claims that would otherwise have to be satisfied out of the treasury.

Briggs *v.* Cornwell:

When a stockholder buys a claim against the company, he pays nothing into its treasury, nor does he diminish the amount of claims upon it. Why, then, should he be permitted to offset his demand upon the company against the creditor's demand upon him as a stockholder? If he buy a claim, he may collect it in the ordinary way from the company, but it would make the law which requires capital to be paid in a nullity to hold that the stockholder had paid his subscription to the capital stock, when all he had done was to buy a claim against the company. In the case of *Sawyer* v. *Hoag* (17 Wall. 622), the supreme court of the United States used the following language in respect to the right of a stockholder to offset a claim against the company, when sued for the benefit of the creditors of the company : " To warrant a set-off, the debts must be *mutual ;* must be in the same right. The case before us is not of that character. The debt which the appellant owed was a trust fund, devoted to the payment of all the creditors of the company. As soon as the company became insolvent, the right of set-off for an ordinary debt to its full amount ceased. It became a fund belonging equally in equity to all the creditors, and could not be appropriated by the debtor to the exclusive payment of his own claim. The unpaid stock was a trust fund for all the creditors, which could not be applied exclusively to the payment of one claim, although held by the stockholder who owed that amount on his subscription."

I think that the principle enunciated by the supreme court of the United States is applicable to the case before us, and that the judgment of the court below should be affirmed, with costs.

J. F. DALY, J., concurred.

Order affirmed, with costs.