### WHITE, CORBIN & CO. v. JONES.

(Supreme Court, Appellate Division, Fourth Department. November 22, 1899.)

1. CORPORATIONS—OVERVALUATION OF STOCK—EVIDENCE.

A corporation was formed by consolidating two firms, inventorying their property, and issuing stock for it. The consideration paid by the company for the property of one of the firms was largely in excess of its value as shown by its books. Its business was unprofitable, and there was no valuable good will. The property of the other firm, which had been used for some time, was inventoried at its original cost, and such firm reserved to itself all its book accounts. *Held* sufficient to support

a finding that there was an overvaluation of the properties when the company was organized.

**2. SAME—IMPAIRMENT OF CONTRACTS.**

A purchaser of stock of a corporation assumes the statutory liability of a stockholder for an indebtedness contracted before the capital stock was fully paid in, and the enforcement of such liability does not impair the obligation of his contract.

**3. SAME—RECORDING CERTIFICATE OF PAYMENT OF STOCK.**

The mere recording of a certificate reciting that a corporation's capital stock was fully paid does not terminate the stockholder's statutory liability for the company's indebtedness because of unpaid stock, since the stock must have been actually paid in, and the certificate recorded, to terminate such liability.

**4. SAME—EVIDENCE—ADMISSIBILITY.**

In an action by a creditor to enforce a stockholder's statutory liability for corporate indebtedness because of unpaid stock, where the company was formed by the consolidation of two firms, evidence as to whether the business of the firms was profitable, the actual value of their property, and the amount of their debts, is admissible in estimating the value of their property.

McLennan, J., dissenting.

Appeal from trial term, Monroe county.

Action by White, Corbin & Co against William Martin Jones to enforce defendant's liability as a stockholder for corporate debts. From a judgment for plaintiff, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Upon a former trial of the issues of fact a verdict was rendered for the plaintiff, and a motion for a new trial on the minutes was denied, and an appeal was taken to the general term of the Fifth department from the judgment entered upon that verdict, and from the order denying the motion for a new trial on the minutes. The judgment and order were sustained, and an opinion was delivered, which is found in 86 Hun, 57, 34 N. Y. Supp. 203. From the judgment of the general term affirming the judgment entered upon the first verdict an appeal was taken to the court of appeals, and a reversal was ordered in consequence of an erroneous ruling in respect to the admission of evidence, as appears by the opinion delivered in the court of appeals, reported in 155 N. Y. 475, 50 N. E. 289.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, SPRING, and SMITH, JJ.

W. Martin Jones, in pro. per.
David Hays, for respondent.

HARDIN, P. J. Plaintiff dealt with the Rochester Lithographing & Printing Company, which latter company became indebted to the plaintiff, and upon such indebtedness the plaintiff recovered a judgment, and issued an execution, which was returned unsatisfied before this action was commenced. At the time the indebtedness accrued to the plaintiff, the defendant was a stockholder in the Rochester Lithographing & Printing Company. Plaintiff's indebtedness accrued by reason of the sale of envelopes, and in this action the plaintiff claims the defendant was liable as a stockholder, on the ground that the capital stock of the company was not fully paid, and that a large proportion of its said stock was fraudulently issued for property worth a much less sum than the amount of the stock issued for the property. It appears by the evidence that before the organiza-

tion of the Rochester Lithographing & Printing Company, in May, 1887, there was in existence the firm of Willard, Pitt & Moore, engaged in the lithographing business in Rochester under the firm name of the Rochester Lithographing Company; and there was also in existence, prior to the formation of the stock company, in May, 1887, a firm known as Goble & Vredenburg, engaged in the printing business. It appears that a scheme was entered into by the two respective firms to consolidate the two plants, and by inventorying their property and machines, and issuing stock for the property, a considerable profit might be made. It appears by the evidence that in the early part of the negotiations the parties contemplated a capitalization of $50,000, and the issuance of 50 shares of stock, or $5,000, to each of the firms composing the new organization, upon the assumption that the new organization was to assume the debts of each firm. $27,500 was issued at the time of the incorporation. Sixty-five shares were issued for money to three persons, and the remaining 210 shares for the property to the persons interested in the two firms brought together. One hundred shares were issued to Goble & Vredenburg, and 110 shares were issued to Willard, Pitt & Moore. About the time of the formation of the corporation it seemed to be the desire of Pitt to get rid of Willard and Moore, and he secured an arrangement by which the corporation was to assume the payment of the firm debts; and he then promised $3,000 to Willard for his interest, and $350 for the interest of Moore, in the firm. Willard hesitated considerably about accepting the new arrangement, and was thus enabled to get more for his supposed interest than Moore. It seems that the bill of sale from Willard and Moore to Pitt was prepared by the defendant, and was made subject to the firm debts, and in that agreement it was recited that they amounted to $22,720.10. That agreement was acknowledged before the appellant, as notary, on May 10, 1887, and recited a consideration of $30,223.44; and it appears by the evidence that on the same day Pitt transferred the property to the corporation, the corporation assuming all the firm debts, and in addition thereto the $3,000 payable to Willard and the $350 payable to Moore, thus making an aggregate of debts of $26,070.00; and the corporation assumed to pay for the property $11,000 in stock, besides assuming the debts, making the actual consideration undertaken to be paid by the corporation for the property the sum of $37,070. At that time, according to the books of the firm, the value of its property was $25,000. There was some evidence given tending to show that the value of the plant was less than the amount carried on the books as its value. The property had been in use for some length of time. There was evidence given tending to show that the property was deliberately overvalued, which the corporation received from the firm of Willard, Pitt & Moore. There is some evidence in the case to the effect that the good will of the business was of some value, and it is claimed that it made up for the amount of the overvaluation of the tangible property; and in that connection it may be observed that there is evidence tending to show that the business theretofore carried on was unprofitable, and that in fact there was no valuable good will. There was evidence given

tending to show that there was an overvaluation of the property taken from Goble & Vredenburg. That firm, when the corporation was born, had been using their plant some four years; and, for the purpose of passing it over to the corporation, it was inventoried at its original cost price. That firm reserved to itself its book accounts, amounting to somewhere between $2,500 and $3,000. No detailed inventory of its property was prepared, and there is considerable evidence tending to show that there was an overvaluation of the property at the time it was passed over to the corporation. It may be said there is a conflict in the evidence, to some extent, as to the value of the properties of the two concerns that were turned over to the new corporation.

We are asked to reverse the judgment because the verdict is against the weight of evidence. We think the evidence presented a question of fact, for the consideration of the jury, as to whether there was an overvaluation of the properties at the time the corporation was born. The force and effect to be given to the evidence pro and con on the subject of overvaluation was referred to in the course of the charge delivered by the learned trial judge, and it must be assumed that the verdict of the jury is the result of a careful consideration of the conflicting evidence upon that subject. In the course of the charge, the judge said:.

"The burden rests upon the plaintiff of satisfying you that this was a substantial and intentional overvaluation for the purpose of evading this statute. * * * If there is an overvaluation so substantial in amount that, either in connection with proof of the intention, or from the facts upon which the intention may be clearly found, it is evident that there was an intent to evade the statute, then, no matter how negatively honest a man may think he was, he is liable, under this statute, to the charge of overvaluation. * * * The burden which the plaintiff assumes is that of proving by a fair preponderance of the evidence these facts to which I have called your attention as necessary elements in this case. He must prove it by a fair preponderance of the evidence, and what does that mean? It does not mean the greater number of witnesses, but it means that there is, upon his side of the case, that weight of evidence which would lead any fair, intelligent man to say that the probabilities and the facts seem to bear out the claims and contentions of the plaintiff. If you find that the evidence is equally balanced, or that the weight is the other way, and in favor of the defendant, then you will render your verdict for the defendant."

Under the evidence given, and in the light of such a charge as we have quoted from, we are not inclined to disturb the verdict as being against the weight of the evidence. It may be observed that it is the verdict of a second jury on much the same evidence, and in the same direction, as the first verdict. It may be further observed that the verdict was sustained, as being in accordance with the weight of the evidence, by the general term, when the case was before it, as reported in 86 Hun, 57, 34 N. Y. Supp. 203. Apparently, the trial judge assumed to follow the opinion of the general term in this case; and we have looked with some care at the rulings made in the reception and rejection of evidence, and to the requests to charge, and to the exceptions relating to refusals where the requests were declined, and we are inclined to think the trial proceeded in accordance with the rules of law which were applicable to the issues of fact. Besides the

opinion found in 86 Hun, 57, 34 N. Y. Supp. 203, several cases bearing upon the questions of law there considered are reported. See Gamble v. Water Co., 123 N. Y. 91, 25 N. E. 201, 9 L. R. A. 527; Tube-Works Co. v. Gilfillan, 124 N. Y. 302, 26 N. E. 538. In the latter case it was said:

"All that the statute requires, to make a stockholder liable, is that a valid debt shall be contracted under the circumstances therein mentioned, and before the capital stock has been paid in, either in cash, or in property honestly regarded as a fair equivalent to cash. The object of the statute in requiring a certificate to be filed is to inform the public so that they can transact business with the corporation upon the assurance either that the capital stock has all been paid in, or that the stockholders are severally liable for an amount equal to the stock held by them, respectively. If, therefore, the plaintiff, when it parted with its goods, knew the facts as they then existed, it knew no more than the statute contemplates that all persons who deal with manufacturing corporations shall know."

In chapter 688 of the Laws of 1892, section 42 was amended by inserting in that section, viz.: "No such stock shall be issued for less than its par value;" and in section 54 the liability of stockholders is declared to exist "until the whole amount of its capital stock issued and outstanding at the time such debt was incurred shall have been fully paid." When Douglass v. Ireland, reported in 73 N. Y. 100, was on trial before me at a special term in Lewis county, I submitted to the jury the question as to the value of the property, and upon the coming in of the verdict of the jury, assessing the property at a greatly reduced amount from that which it was taken when turned into the corporation, I thereafter found that the statute had not been complied with; and, in the course of the opinion delivered in the court of appeals in that case, it was said:

"A deliberate and advised overvaluation of property thus purchased and paid for is a fraud upon the law, and a violation of the condition on which the exemption of stockholders from liability under the provisions of the original statute is made to depend. It is in direct violation of the policy as well as of the terms of the law, which demands payment, either in money, or property at its value, of all the capital stock of the company, as a condition of immunity to the stockholders from liability for debts of the corporation."

That case was approved in Tube-Works Co. v. Gilfillan, 124 N. Y. 302, 26 N. E. 538; and in the course of the opinion delivered in the latter case it was said:

"All that the statute requires, to make a stockholder liable, is that a valid debt shall be contracted under the circumstances [in the statute] mentioned, and before the capital stock has been paid in cash, or in property honestly regarded as a fair equivalent to cash."

See, also, Moosbrugger v. Walsh, 89 Hun, 564, 35 N. Y. Supp. 550; Briggs v. Cornwell, 9 Daly, 439; Briggs v. Waldron, 83 N. Y. 582. In the last case cited it was said:

"The point that the statute imposing liability upon the stockholders of the company applied only to original stockholders or corporators, and not to persons becoming stockholders after the formation of the company by transfer or otherwise, we consider too unsubstantial to require discussion."

See, also, McDowall v. Sheehan, 129 N. Y. 200, 29 N. E. 299; Herbert v. Duryea, 34 App. Div. 479, 54 N. Y. Supp. 311.

When the appellant became the purchaser of the stock, he took it

subject to the provisions of the statute as to liability, as well as subject to the privileges of exemption created by statute. The liability of a stockholder he assumed by becoming a purchaser of the stock, and we think the enforcement of such liability in no way impairs the obligation of the contract. In re Reciprocity Bank, 22 N. Y. 9. When the appellant made the first purchase of stock, he knew that it had been in part issued for property, and in part on account of book credits. It was not until after the filing of the certificates that the stock had been fully paid that credit was obtained from the plaintiff, and an indebtedness created which is represented by its judgment against the corporation. Prior to the creation of that debt, apparently, the appellant knew the circumstances attending the organization of the corporation, and before he acquired the last 100 shares of stock in the corporation. The mere recording of the certificate reciting that the stock was fully paid up did not terminate the liability of the stockholder. Veeder v. Mudgett, 95 N. Y. 295.

Upon the evidence given, and the charge of the court, the jury evidently found that all of the trustees were guilty of a deliberate overissue of stock; and that seems to follow from a perusal of the evidence, as well as a portion of the charge delivered by the trial judge. He said to the jury:

"You must find that these trustees, as such, as a body, overvalued this property intentionally, and for the purpose of evading this statute. The mere knowledge of a single man, who happened to be a trustee, upon that subject, would amount to nothing, if the others did not know, and were not chargeable with that knowledge."

Several requests were made to charge, which related to matters which had already been covered in the body of the charge. Under such circumstances, it was not error to refuse to yield to the requests.

Nor do we think it was error in the court to allow the witness Moore to state whether his business which the corporation had purchased had been profitable. The defendant had claimed that there was evidence that the good will of the business should be considered in estimating the value of the plant turned over to the corporation, and, under such circumstances, it was proper for the plaintiff to prove that the business had been unprofitable. This question seems to have been passed upon by the general term (86 Hun, 60, 34 N. Y. Supp. 203) in reviewing the first trial, where a similar question was raised. Nor do we think it was error to receive evidence of the actual value of the property for which stock was issued. In Boynton v. Hatch, 47 N. Y. 225, it was said, "The actual value of the property is an important item of evidence, and, with other circumstances, may be sufficient to establish fraud." In Douglass v. Ireland, 73 N. Y. 105, it was said, "A seller of the property may well be presumed to know its value." Nor do we think it was error to allow the witness Willard to state the amount of the debts of the firm of Willard, Pitt & Moore, as the corporation paid for the property acquired by assuming their debts, and it therefore became necessary to ascertain the extent of the firm's indebtedness. We have looked at the other exceptions taken to rulings, and rejection and admission of evidence, and we have not found any prejudicial to the defendant, or which require a reversal.

The foregoing views lead to the conclusion that the verdict should remain.

Judgment and order affirmed, with costs. All concur, except McLENNAN, J., who dissents, and SMITH, J., not voting.