JERMAN'S ADM'R, *Appellant*, v. BENTON.

1. **Stockholders**: DOUBLE LIABILITY. The constitution of 1865 went into force July 4th of that year; but the double liability clause contained in It was not carried into effect by appropriate legislation till the act of March 19th, 1866. Between these dates, viz: on the 1st day of January, 1866, certain bonds were issued by a corporation. This double liability was abolished by the constitutional amendment of November 8th, 1870. In an action brought after 1870; *Held*, that the holders of the above bonds were not entitled to enforce against the stockholders of this corporation the double liability provided by the constitution of 1865.

2. ——: ——: RAILROAD COMPANIES. By the Revised Statutes 1855 the holders of stock in railroad companies were not subject to the double liability imposed on stockholders in other corporations. R. S. 1855, p. 372, § 13; p. 413, § 10; p. 438, § 57.

3. The Bellefontaine Street Railway Company (of St. Louis) was a railroad company within the meaning of the statute of 1855 defining the stockholders' liability.

4. **Stockholder's Liability**: SET-OFF. In a proceeding under the statute by motion for execution against a stockholder, the stockholder is entitled to offset against his liability any demand he may have against the corporation.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*Broadhead & Haeussler* and *C. O. Bishop* for appellant.

*J. M. & C. H. Krum* for respondent.

MARTIN, C.—This was a proceeding by motion under the statute for execution against the defendant as a stockholder in the Bellefontaine Railway Company. On the 5th day of March, 1877, the plaintiff's intestate recovered judgment against the Bellefontaine Railway Company in the sum of $13,158.60. This judgment was rendered on certain bonds issued by said company on the 1st day of January, 1866. Execution having been returned *nulla bona*, the plaintiff filed his motion against William H. Benton for a judgment against him as a stockholder in the company at the date of the issue of the bonds and at the time of filing the motion. The allegations were sufficient to admit the evidence in the case, which was contained in an agreed statement of the facts.

It appears that the company was organized on the 15th day of March, 1864, under a charter granted by special act of the legislature contained in Session Acts 1862–3, page 488; that William H. Benton, defendant, became a subscriber on the 10th day of February, 1865, for 518 shares of the capital stock, of the par value of $100 per share; that by an increase of the capital authorized by vote on the 20th day of September, 1865, he became entitled to another 518 shares, making 1,036 shares in all; that after parting with some of this stock he remained owner of 734 shares, of the par value of $73,400, for which a certificate was issued to him dated June 7th, 1869; that on these shares there was actually paid in, $67 per share, leaving unpaid $33 per share, or a sum equal to $24,222. It also appears that said Benton, on the 22nd day of May, 1876, obtained

a judgment against the company for $14,913.10, on which an execution had been returned *nulla bona;* that on the 10th day of April, 1876, he recovered another judgment in the sum of $13,088.33, upon which he had realized $2,835.50, leaving the remainder unsatisfied; also that he holds as owner thereof a note of the company in the sum of $2,500, due in December, 1875. It was admitted that the plaintiff's intestate acquired the bonds upon which the judgment was rendered by devise from her husband, who died July 25th, 1874. There were other judgments and other execution creditors of the company, claiming judgment against the defendant as stockholder.

The circuit court held the defendant liable to the execution creditors of the company in a sum double the amount of his stock, giving credit of course for the amount of stock paid up, and rendered judgment in favor of the plaintiff in the sum of $16,236.99. This judgment was, on appeal to the St. Louis court of appeals, reversed, with directions to assess judgment against him for the unpaid portion of his stock on the basis of single liability only, and to allow him to offset any matured indebtedness held by him against the company. From this judgment the plaintiff has appealed.

Whether the defendant is responsible as a stockholder under the double liability clause in force at different times in this State constitutes the principal question for decision.

I. It is difficult to perceive how he could be held answerable to this plaintiff under the double liability clause

1. STOCKHOLDERS: double liability.

of the constitution of 1866. Although that constitution went into force July 4th, 1865, the double liability clause contained in it was not carried into effect by appropriate legislation until the passage of the act of March 19th, 1865. Afterward, and before the commencement of this proceeding, that clause was entirely repealed by the constitutional amendment of November 8th, 1870. This amendment declared that all laws, ordinances and provisions inconsistent with it should be

forever abolished. The law-making power imposed this liability on the stockholder, and it assumed the right to relieve him from it, a right which cannot be questioned except by those creditors, who could successfully show that the obligation of their contracts had been impaired by the act of repeal. Clearly the plaintiff in this case cannot insist that the obligation of his contract has in any way been impaired by this change in the liability of the stockholder, because it originated anterior to the 19th day of March, 1866, at which date the double liability clause of the constitution of 1865 first took effect; the bonds upon which his judgment is founded, having been issued January 1st, 1866. They certainly could not have been issued upon the faith of the double liability clause of March 19th, 1866. And the fact that the act imposing that liability was soon afterward passed, and for a time furnished a better remedy for the enforcement and collection of the bonds would not have the effect of so connecting the double liability clause with the obligation of the bonds as to place that clause beyond the power of the law-making power to repeal it, as the contracts were entered into before it was passed. The protection against repeal of the clause is recognized only as to contracts made on the faith of the clause. *Prov. Sav. Inst. v. Jackson Place Skating Rink*, 52 Mo. 552; *Hawthorne v. Calef*, 2 Wall. 10. The court of appeals was, therefore, right in holding that if the defendant was subject at all to the double liability clause, it had to be by reason of some previous law or constitution.

II. It is claimed by counsel for plaintiff that the defendant was subject to the double liability clause of section 13, chapter 34, being "An act concerning corporations." 1 R. S. 1855, p. 372. It is unnecessary to consider the language of this section. It purports to embrace "all corporations hereafter created by the legislature, unless otherwise specified in their charter," and imposes upon the stockholder thereof the double liability clause as to "all debts contracted during his ownership" of the stock. The Belle-

fontaine Railway Company was created by the legislature after the enactment of this chapter; there was no provision in its charter inconsistent with the section imposing the double liability; and the bonds upon which plaintiff obtained judgment were issued while defendant was owner of the stock in controversy. If the defendant, as stockholder of this company, is not in some manner relieved from the effect of the double liability clause of the Corporation Act, then the plaintiff, as a holder of the bonds so issued, must have the right to invoke its advantages as a part of the obligation of his contract, notwithstanding any subsequent repeal.

III. The court of appeals held that the defendant, as a stockholder in a railway company, was relieved from the double liability clause of the Corporation Act, by virtue of section 57 of the 39th chapter of the statute of 1855, containing "An act to authorize the formation of railroad associations and to regulate the same;" (R. S. 1855, p. 438, § 57;) which reads as follows : "All existing railroad corporations within this State, and such as now are or may be hereafter chartered, shall respectively have and possess all the powers and privileges contained in this act; and they shall be subject to all the duties, liabilities and provisions, not inconsistent with the provisions of their charter, contained in this act." One of the "privileges" and "provisions" in this Railroad Act, extended by the 57th section to all existing and after-chartered railroad corporations is contained in the 10th section thereof and reads as follows : "Every stockholder of any company formed under this act, shall be individually liable to the creditors of such company, to an amount equal to the amount unpaid on the stock held by him, for all debts and liabilities of such company, until the whole amount of the capital stock so held by him shall have been paid to the company." * * It will be observed that this clause assumes to fix the liability of the stockholder to creditors, and that such liability so fixed is measured by the unpaid

2. ——. ——: railroad companies.

amount of his capital stock. Of course this provision is inconsistent with the double liability clause in the general Corporation Act, and I think the court of appeals was right in holding that it established and was intended to establish the single liability clause with respect to stock-holders in railroad corporations. It is true that the section on its face purports to apply to corporations "formed under this act," and that the Bellefontaine Railway Company was not formed under the act. But we have seen that the 57th section extends the "privileges" and provisions of the act to all existing railroads in the State, and such as should thereafter "be chartered." This was a subsequently chartered railroad, and if it is a "railroad corporation" within the meaning of the 57th section, then its stockholders are protected by the 10th section, which imposes the single instead of the double liability on such corporations.

IV. The court of appeals held that a horse or street railroad, like the one of which the defendant is a stock-holder, was a railroad corporation within the meaning of the 57th section of the Railroad Act of 1855. Not deeming it proper to express an opinion outside of the case before us, it is sufficient to say that in our opinion the ruling was correct in its application to the Bellefontaine Railway Company. The precise question is not whether a horse or street railroad company could have organized and become a legal corporation under the general railroad act of 1855, but whether the 57th section of that act was broad enough to include what is known as a horse or street railroad under the general term of "existing railroad corporations," or such as should thereafter be "chartered."

It will hardly be claimed that all the railroads existing in the State in 1855 with the rights and privileges peculiar to their different charters, could have been organized under the act of 1855. The point for decision cannot be very satisfactorily disposed of by considerations extending no further than the actual methods of locomotion employed

by the companies.    The charter of the Louisiana & Columbia Railroad, (which afterward was copied in the charter of the Hannibal & St. Joseph Railroad,) was granted in 1837, and seems to contemplate a possible use of the railroad track by citizens in their own carriages under regulations prescribed by the company.    Indeed the further we go back into the past the nearer we come to the primitive railroad, which was operated exclusively by animals as the propelling power.    In truth the horse railroad more nearly approximates the primitive idea of a railroad than those vast agencies operated by steam which have done so much in modern times to develop the material resources of the world and advance its civilization.

But even applying this narrow test embraced in the methods of locomotion, it would be impossible to exclude the Bellefontaine Railroad Company from the meaning and operation of the 57th section of the Railroad Act.    By the 7th subdivision of the 29th section of that act, every company organized under it is authorized "to take and convey persons and property on their railroad, by the power or force of steam, or of animals, or by any mechanical power, and to receive compensation therefor."    1 R. S. 1855, p. 426.    By the 2nd section of the charter of the Bellefontaine Railway Company, it was authorized to operate a double or single track "in the city and county of St. Louis."    By the 4th section it is provided that "the said railway shall be operated by horse power only within the limits of the city of St. Louis."    Sess. Acts 1863-4, pp. 488, 489. As to that part of its line at that time outside of the city limits, there would seem to have been no prohibition against the use of steam.    Curiously enough the charter contains no express provision indicating what shall be carried, whether freight or passengers or both.    But undoubtedly the broader test of comparison is the safer one.    Horse or street railroads, as far as they are employed in the cities, serve the same uses and purposes for which railroads are used between distant points in the country.    They possess the same

essential features as servants of the public, the principal differences being traceable to the peculiar character of the territory they are operated in, and the safety, comfort and wants of the people in that territory.

V. Another question not less important than the one disposed of is, whether the defendant is entitled to have 4. STOCKHOLDER'S LI- credited on his stock liability any debts ABILITY: set-off. existing in his favor against the company. This question becomes important in consequence of the conclusion reached by us, which exempts the defendant from the double liability clause. It seems from the evidence in the record, as well as the agreed statement of facts, that the defendant is a judgment creditor of the corporation in the aggregate sum of $28,001.43, upon which he has realized only $2,835.50; also that he holds an unpaid note of the company in the sum of $2,500. The court in its final order awarding an execution against the defendant found that the company was indebted to him in the sum total of $82,655.49, which must have included other indebtedness, and after allowing this sum as a credit on his stock liability to creditors, it adjudged him still liable to the extent of a balance of $64,144.51, a sum more than sufficient to satisfy the plaintiff's execution. But as we hold that he is not subject to the double liability clause, but only for the amount of his unpaid stock, which amounts to $24,222, it is evident that if these counter-debts are to be allowed as credits, his liability to creditors will be entirely extinguished and judgment will have to go in his favor.

The learned counsel for the plaintiff insists that these judgments and cross-demands in favor of the defendant cannot be taken into consideration in determining the defendant's statutory liability. The right to offset the indebtedness of the company to him against this liability has come quite frequently before the courts of late years, but has never been passed upon by this court. The decisions in other states are so conflicting that they fail to furnish any very satisfactory guide in the construction and enforce-

ment of our statute. It is impossible to understand them well except in connection with the provisions and phraseology of the statutes which they assume to construe and enforce.

Under a statute in New York which provided "that for all debts due and owing by the company at the time of its dissolution, the persons then composing such company shall be individually responsible to the extent of their respective shares of stock and no further," it was held in a suit in equity by a creditor against the stockholder, that they were entitled to a deduction on their liability, for such sums as they had paid in good faith for the debts of the company and for money advanced for the benefit of the company. *Briggs v. Penniman*, 8 Cow. 387. Under another statute in the same state which provided that "the total amount of indebtedness shall not exceed three times the amount of the capital stock actually paid in; and in case of any excess the directors who suffered it shall in their individual capacity jointly and severally be liable for such excess to the corporation, and in event of dissolution, to any of the creditors, to the full amount of such excess;" it was held that the directors, in a suit against them by creditors, were entitled to offset their advances to the company and debts contracted by them for the benefit of the company. *Talmadge v. Fishkill Iron Co.*, 4 Barb. 382. In a proceeding in behalf of creditors to wind up an insolvent bank in the same state, under an act of the legislature of 1849, it was held that the stockholders were not entitled to any deduction for debts due them by the company. The decision was placed by Judge Denio upon the peculiar character of the proceeding authorized by the statute, which had for its object the enforcement of every stockholder's liability and the distribution of what was collected to all the creditors, whether stockholders or not. He remarks: "Under the Manufacturing Act and in some other corporations, a creditor might sue a single stockholder, who might set up in reduction of his liability that he was also a cred-

itor." *Matter of the Empire City Bank*, 18 N. Y. 199. In the Manufacturing Act of New York it is provided that "all the stockholders shall be individually liable to the creditors of the company to an amount equal to the stock held by them respectively for the debts of the company, until the whole capital shall have been paid in." In the construction of this provision the courts of New York have invariably held that the stockholders, when sued by a creditor, was entitled to a reduction of his liability to the extent of the indebtedness held by him in good faith against the company. *Agate v. Sands*, 8 Daly 67; *Garrison v. Howe*, 17 N. Y. 458; *Agate v. Sands*, 73 N. Y. 620; *Mathez v. Neidiz*, 72 N. Y. 100; *Briggs v. Cornwell*, 9 Daly 436; *Wheeler v. Millar*, 90 N. Y. 354.

This right of reduction was ably examined by Chief Justice Church in *Mathez v. Neidiz*, and it was conceded to the stockholder upon equitable principles. He says : "This is not a direct provision of the statute, but an equitable construction of it, on the assumption that it was not the design of the framers of it, that a stockholder, who was a creditor of the company to the full amount of his stock, should be individually liable to another creditor, as he stands upon the same ground and is entitled to claim under the act equally with the creditor who is not a stockholder." The doctrine of this case is expressly recognized in the recent case of *Wheeler v. Millar*, a case which might be misunderstood upon a casual reading. In this last case the stockholder held a small debt against the company, while the company held a much larger one against him on account of his subscription for stock. In an action under the statute against him by an outside creditor, it was held that as the balance of accounts between himself and the corporation was against him, he was not a creditor, and possessed nothing which could be noticed in reduction of his statutory liability. His claim as a creditor was exhausted as an offset against his liability as a subscriber for stock, and left nothing to be credited on his statutory liability, which,

under the act, was measured by the amount of his stock, irrespective of any payments made on account of it. Under the law of set-off he was entitled to credit his claim against his contract liability; and to admit it in equity, against his statutory liability, would have been giving him the benefit of it twice, and accordingly it was denied. If the balance had been in his favor so as to make him a creditor of the company, he would have received the benefit of the balance on his statutory liability.

Under a statute in Illinois declaring that "whenever default shall be made in the payment of any debt or liability contracted by the corporation, the stockholders shall be held individually responsible for an amount equal to the amount of stock held by them respectively," it was decided that a stockholder could not, in an action by a creditor to enforce this liability, set-off an indebtedness of the company to himself, for want of mutuality. *Buchanan v. Meisser*, 105 Ill. 638. The court in its opinion decline to say what would be the result if the statute liability was exceeded in amount by counter-indebtedness of the company. It has been held in the same state that the stockholders under this statute are liable in the nature of partners to the extent of the amount of their stock. *Gauch v. Harrison*, 12 Bradw. 457; *Meisser v. Thompson*, 9 Bradw. 368.

A statute in the state of Maine provided that "the individual property of every stockholder shall be liable to the amount of his stock for all debts due from the corporation contracted during his ownership of the stock." In construing this statute the court, as well as all parties to the cause, seem to have assumed that without some statute authorizing it, the indebtedness due to the stockholder from the corporation could not be taken into account against his stock liability, and the principal issue in the case was, whether the indebtedness pleaded by the defendant came within the purview of a subsequent act of the legislature permitting certain payments to the use of the company to be taken into account. *Grose v. Hilt*, 36 Me. 22. In a suit in Penn-

sylvania by a mutual insurance company to collect a premium note, it was held by Chief Justice Gibson that the defendant after insolvency of the company could not offset an indebtedness of the company to him. *Hillier v. Alleghany Mutual Ins. Co.*, 3 Pa. St. 470 ; *Lawrence v. Nelson*, 21 N. Y. 158.

A statute in Maryland provided that the " stockholders shall be severally and individually liable to the creditors of the company in which they are stockholders to an amount equal to the amount of stock held by them respectively, for all debts and contracts made by such company until the whole amount of capital stock fixed and limited by such company shall have been paid in." It was held in a suit in equity by creditors that this statute contemplates an absolute liability irrespective of debts, and that there could be no set-off as against creditors. *Mathews v. Albert*, 24 Md. 527.

A charter of a corporation in Georgia contained a provision that " the stockholders in said company shall be liable *pro rata* for the debts of said company to the amount of the stock they respectively hold." In construction of this clause it was decided that if a stockholder had paid his *pro rata* share of the debts of the company, or if the company was indebted to him in good faith for an amount equal to his *pro rata* share, he could not be made liable again. *Boyd v. Hall*, 56 Ga. 563.

In construction of the 20th section of the Bankrupt Act, which declares that " in all cases of mutual debts or mutual credits between the parties, the account between them shall be stated and one debt set-off against the other, and the balance only shall be allowed or paid," it was held, after suit brought by an assignee and bill filed by the defendant to enforce the set-off of a debt against the company, that such indebtedness did not constitute either a legal or equitable offset, and it could not be accepted in reduction of the stockholder's liability. *Sawyer v. Hoag*, 17 Wall. 610. The doctrine of this case has been recently recog-

nized and approved by the same court.  *Scovill v. Thayer,* 105 U. S. 152.

In this State the summary remedy for the enforcement of the double liability of stockholders as contained in section 13, (Wag. Stat., 291,) of the chapter on corporations, having been changed so as to conform with the repealing amendment of 1875, declares that "if any execution shall have been issued against the property or effects of a corporation, and if there cannot be found whereon to levy such execution, then such execution may be issued against any of the stockholders to the extent of the amount of the unpaid balance of such stock by him or her owned." R. S. 1879, § 736. The right of the plaintiff to an execution against the defendant rests upon this section; and the right of the defendant to a reduction of his statutory liability on account of debts due him from the company must depend upon the construction and effect given to it by the courts under our existing law. It is evident that the question could be decided either way in pursuance of good authority. The popular efficiency of numerical majorities as applied to judicial authorities cannot be accepted in disposing of legal questions. It, therefore, becomes necessary to look at the principles underlying the point in controversy, and the probable consequences which must follow its final determination.

In the first place it may be observed that there is a marked distinction between our statutes and the statutes in the other states which have been referred to. In the statutes of such states when the particular contingency defined by them respectively happens, the stockholder becomes individually liable to the creditor in an amount equal to the full amount of the stock owned by him. This liability is not affected in any manner by the condition of his stock account. It is a matter of no consequence whether his stock has been paid up or not paid up. The liability is a creature of statute, and is not based on any liability whatever of the stockholder to his company. After having paid

up his stock in full, he may find himself liable to a creditor in the same amount. His liability under our statute is a very different thing. It is based upon his contract liability, and is measurable by what is due or payable under it. The statute takes up his contract liability for unpaid stock as it finds it, and subjects it to the demands of the execution creditor. In discharging this liability to the creditor, the stockholder is also discharging it to the company. This is not the case with the statutes in the states referred to, although such payment may well give to him something in the nature of a demand against his company. The unpaid stock of a stockholder constitutes a portion of the assets of the company. When demanded by the company he is permitted to reduce his liability by a counter-indebtedness of the company to him. It is said that there is a mutual indebtedness here which authorizes the offset. When the same liability for unpaid stock is subjected to the behests of an execution creditor because it constitutes available assets of the company, why should he be prevented from showing that the company is indebted to him in an amount which leaves the enforcement of the liability against him, irrespective of counter-indebtedness, devoid of the equity which naturally suggests the adjustment of cross-demands. Indeed our statutes go so far as to secure in a measure the right of offset on non-negotiable debts in spite of assignments and transfers. R. S. 1879, § 3868.

Certainly there is no mutuality of indebtedness in this case, if we look merely at the parties between whom the controversy has arisen. And a want of such mutuality, to be determined by inspection of the parties, is sufficient to exclude the defendant from the benefits of a legal offset. But the inability of the defendant to avail himself of a legal offset, constitutes one of the recognized grounds upon which equity interposes its relief in favor of the cross-demand. *Barnes v. McMullins*, 78 Mo. 260.

The argument of those who deny the equity belonging to the relation of a stockholder as a creditor, starts with the

proposition that all capital and obligations for unpaid capital constitute a trust fund for creditors—a proposition which every one in this country will admit. It is next argued that if a stockholder is permitted to bring forward his claims against the company as an offset against his liability to creditors, he would in this manner obtain payment of his demand in preference to other creditors. Accordingly he is entirely excluded by this course of reasoning as a creditor, and the trust fund in dispute is handed over entirely to the suing creditor, who thereby obtain full preference and satisfaction of his demand, thus obtaining the advantage which was denied to the other creditor, merely because he was a stockholder. It is difficult to perceive on what principle one creditor should be preferred to another. The injustice of the inequality is as apparent when it is suffered by one as by the other. A stockholder has the same right with a stranger to become a creditor of the company. Neither is there anything illegal or reprehensible in the mere fact of his being indebted to the company for unpaid stock. It may be that he has paid all calls which have been made upon him, and that he is not delinquent in any respect. Be this as it may, his unpaid stock constitutes assets of the company in like manner as if paid up, and creditors along with himself may be regarded as contracting with the company on the faith of this unpaid stock, in like manner as if paid up. It constitutes the same amount of assets in whatever form it may be. The defendant, notwithstanding he is a stockholder, has the right as a creditor to a share in this fund. As a creditor it may be said that he has an equitable lien upon it along with all the other creditors. An enforcement of the summary remedy against it by execution in favor of one creditor alone must result in a destruction of his equitable right and lien. It may be said that this result follows the enforcement of it as against any other assets of the company. But in relation to such other assets the creditors stand upon an equality; and the reward of priority is the result of dili-

Jerman v. Benton.

gence in the one first moving. But in respect to the assets in the shape of an obligation of the creditor in the capacity of a stockholder, there would seem not to be the same equality in respect to the summary remedy, for the reason that such creditor could not move for an execution against himself; and unless his interest is protected in some manner in the summary proceeding, his undoubted equity in the fund which ought to extinguish or reduce his obligation as a stockholder, will be ignored and lost.

In this case the defendant holds executions against the company amounting to about $28,000—more than double the amount of plaintiff's demand as a creditor. His executions have been returned unsatisfied. The extreme limit of his liability at law for unpaid stock is $24,000. The company, however, would not be justified in calling for it except on the terms of his contract of subscription. Neither could it call from him any more than the same per centage which it calls from the other stockholders; and, according to the best considered authorities, he would have the right to set-off his judgments against the company in reduction or extinguishment of liability on the call. As a creditor he has an equitable interest in this fund, which distinguishes him from other stockholders; but the extent of it cannot be ascertained and adjudged in any proceeding at law instituted by or against him. Neither can he, like any other judgment creditor, as already stated, invoke the statutory remedy against this fund as assets of the company, not being able to move for an execution against himself. In no proceeding, except in equity, can his share in this fund be ascertained and adjudged, because in no other proceeding can an account be taken of the total amount of debts and liabilities, the amount and number of shares of stock, the amount of capital paid in, and the amount remaining unpaid from each stockholder, and the fractional portion of liability which must fall upon each stockholder.

For these reasons I am persuaded that the conclusion reached by the St. Louis court of appeals in *Webber v.*

*Leighton*, 8 Mo. App. 502, and the New York court of appeals in *Mathez v. Neidiz*, 72 N. Y. 100, is both sound and just; and that the equity of a creditor in the claim of a stockholder is a good defense in a proceeding at law or in the summary proceeding by motion for execution. The creditor has the option of suing all the stockholders in equity, in which case the exact liability of each can be ascertained and enforced, or he may sue at law any one of them or move for an execution against any one, in which case the exact liability of the stockholder cannot be ascertained or adjusted if he is also a creditor. The absolute enforcement of the summary remedy against a single stockholder, who is also a creditor, would lead to injustice. In such cases it ought to be enforced within bounds which recognize and respect his equity as a creditor. Therefore, when it appears that the stockholder is a creditor in an amount equal to or greater than the amount of his unpaid stock, this fact of itself ought to constitute a sufficient defense to the proceeding against him by motion for execution. When the stockholder's debt for unpaid stock exceeds his claim as a creditor of the company, there would seem to be no valid objection to an enforcement of the summary remedy to the extent of the balance of his unpaid stock, because, as to that, he could not be considered in the light of a debtor with cross-obligations existing in his favor. He is as to such balance a debtor without the equity of a creditor. In accordance with the views herein expressed, the action of the court of appeals reversing the judgment of the circuit court and remanding the cause, should be affirmed.

Under the double liability clause, which was enforced in the circuit court, the plaintiff had such a wealth of liability to count upon, that he could afford to pass without scrutiny a credit of thirty or forty thousand dollars. Since the fund he resorts to, is greatly reduced, it is proper he should have an opportunity to examine the genuineness of the credits which were admitted without question on the

former trial.　Judgment of court of appeals affirmed.　All concur.

In the case of *Cushman v. Benton,* the same questions were presented and the same decision made as in the foregoing case, MARTIN, C., delivering the opinion.