WASHINGTON SAVINGS BANK *et al.*, *Appellants and Respondents*, v. BUTCHERS AND DROVERS' BANK *et al.*

Division Two, July 12, 1895.

1. **Husband and Wife:** AGENCY: RATIFICATION. The evidence to establish a ratification by the wife, of a contract made by the husband as her agent, must be of an unmistakable character. (*Rodgers v. Bank*, 69 Mo. 560.)

2. **Corporation:** UNPAID STOCK SUBSCRIPTION: OWNERSHIP: MARRIED WOMAN. In an action against defendant, as executor of a married woman, by a creditor of an insolvent bank for unpaid stock subscription, a finding of the trial judge on conflicting evidence that the stock was transferred to her by her husband for his own convenience and without her knowledge or authority and that she was not in fact the owner of the stock will not be disturbed on appeal.

3. ——: ——: STOCKHOLDER: SET-OFF. In an equitable suit by a judgment creditor of a corporation against a stockholder to subject to the payment of its debt the stockholder's liability for the remainder unpaid on his stock subscription, the stockholder may set off any demand he may have against the corporation, though the petition charges that the suit is brought on behalf of plaintiff and such other creditors as may come in, it not appearing that any other creditor joined in the proceeding.

4. ——: ——: ——: ——. Such proceeding is merely a race between creditors and not one to reach a trust fund for the benefit of all of the creditors of the insolvent corporation.

5. ——: ——: ——: ——: RES JUDICATA. A judgment in favor of a creditor of an insolvent corporation against a stockholder, on account of unpaid stock, rendered in a proceeding under Revised Statutes, 1889, section 2517, is a bar to any equitable action by the same plaintiff against the same defendant for the same cause.

6. ——: ——: ——: ——: ——. A payment by a stockholder of such corporation of the remainder due on his stock subscription to creditors of the corporation in a proceeding under the said

section 2517, *supra,* constitutes a defense to an equitable suit by other creditors of the corporation against him for their demands.

*Appeal from St. Louis City Circuit Court.*

AFFIRMED IN PART AND REVERSED IN PART.

*James P. Maginn* for appellants.

(1) There was no laches on plaintiff's part. *Bliss v. Pritchard,* 67 Mo. 181, which also holds that laches must be pleaded. *Kelly v. Hunt,* 61 Mo. 466; *Klein v. Vogel,* 90 Mo. 239; *White v. Pendry,* 25 Mo. App. 547; *Bradshaw v. Yates,* 67 Mo. 233. (2) Set-off is not allowable in this action, it being clear from the evidence that the entire trust fund is a mere trifling amount as compared with the claims of creditors. *Webber v. Leighton,* 8 Mo. App. 502; *Shickle v. Watts,* 94 Mo. 410; Judge THAYER's opinion in this cause. (3) Proceedings, at the instance of individual creditors against individual stockholders under section 745, Revised Statutes, 1879, and under section 736, *Ibid.,* by motion for execution, can not be pleaded as *res adjudicata* by the stockholders so proceeded against, when sued in this action. *Lionberger v. Broadway Sav. Bank,* 10 Mo. App. 499; *Simmons v. Heman,* 17 Mo. App. 444; *Donnelly v. Mulhall,* 12 Mo. App. 140; Judge THAYER's opinion in this cause; *Hannah v. Moberly Bank,* 67 Mo. 678; *Merchants' Ins. Co. v. Hill,* 12 Mo. App. 160. (4) The estates of deceased stockholders are liable. Lowell, Transfer of Stock, sec. 29; Thompson, Stockholders, secs. 248 to 254; *Coquard v. Marshall,* 14 Mo. App. 80; *Manville v. Edgar,* 8 Mo. App. 324; *Roeder v. Knobel,* 12 Mo. App. 587; *Bank v. Stockholders,* 6 R. I. 154. (5) Married women who are stockholders in this corporation are liable. *Simmons v. Dent,* 16 Mo. App. 288, and constitutional and statutory provisions therein cited in respect to this very bank. (6) The books of the corporation are evidence,

*prima facie,* of ownership of shares therein. *Bowden v. Johnson,* 107 U. S. 263; *Hoagland v. Bell,* 36 Barbour (N. Y.), 57; *Turnbull v. Payson,* 95 U. S. 421, followed in *Railroad v. Applegate,* 21 W. Va. 180; R. S. Mo. 1879, sec. 737—now sec. 2518; *Skrainka v. Allen,* 76 Mo. 391; R. S. Mo. 1889, secs. 2503, 2504; Lowell, Transfer of Stock, sec. 80.

*G. A. Finkelnburg* for respondent Julius S. Walsh, executor.

(1) The estate of Marie C. Chambers is not liable in this action because said Marie C. Chambers in fact never held more than fifty shares of the stock of said bank (being the fifty shares originally subscribed by her), and as to these fifty shares she has already responded in full on a stockholder's execution against her, in the case of *Simmons v. Walsh,* executor of M. C. Chambers, being case number 63,525 of the St. Louis circuit court. (2) The judgment in the Simmons case (*supra*) was a bar to the present suit, for in the former as in the present suit it was sought to charge Mrs. Chambers' estate with a liability on one hundred shares, and it was then judicially determined that she held but fifty. Simmons, the plaintiff in the first suit, acquired a lien on whatever remained unpaid on defendant's stock, the court had jurisdiction of the *res* and having adjudged that Mrs. Chambers was liable for only fifty shares the subject became *res adjudicata.* *Bittner v. Lee,* 25 Mo. App. 559; *State Savings Ass'n v. Kellogg,* 63 Mo. 540; 1 Herman on Res Adjudicata, p. 562; *Smith v. Stratton,* 56 Vt. 362; *Thobus v. Smiley,* 110 Ill. 316; *Cole v. Butler,* 43 Me. 401. (3) The *pro forma* assignment of fifty additional shares by Mr. B. M. Chambers to his wife without her knowledge to subserve a purpose of his own, as explained by him in his

testimony, did not make her liable to creditors in respect of the fifty shares thus transferred. The evidence tending to show ratification upon her part was insufficient. *Rodgers v. Bank,* 69 Mo. 560; *Eystra v. Capelle,* 61 Mo. 578.

BURGESS, J.—This is an equitable proceeding by plaintiffs as judgment creditors of defendant the Butchers and Drovers' Bank of St. Louis, an insolvent corporation, defendant Walsh, as executor of Mrs. Marie C. Chambers, who was a stockholder in the defendant bank; and defendants Heman and Maguire, and many others who were also stockholders in said bank.

In the trial court judgment was rendered in favor of Walsh, executor of Mrs. Chambers, from which plaintiffs appealed, and in favor of plaintiffs against defendant Heman in the sum of $2,035.96, and against defendant Maguire in the sum of $500, from which judgments Heman and Maguire appealed. Walsh, as executor, and Heman and Maguire are the only parties defendant before this court. Plaintiffs' unsatisfied claims on which this action is founded, according to the finding of the court, amount to $26,671.

The defendant bank became insolvent, ceased doing business, and closed its doors on July 13, 1877. One of the judgments described in plaintiffs' petition against the Butchers and Drovers' bank was rendered December 22, 1880, and the other about April 7, 1881. Executions were duly issued on said judgments and returned *nulla bona* before the commencement of this suit. The stock of the bank consisted of twenty-six hundred and ten shares of $100 each, upon which there had been paid in cash and dividends fifty per cent.

The petition alleges that Mrs. Chambers died in December, 1883, the owner of one hundred shares of

said stock; that defendant Walsh is her duly qualified executor, and the owner of said one hundred shares, on which only $50 on each share had ever been paid, and that no call was ever made by defendant bank for any part of its said unpaid capital stock.

Defendant Walsh, as executor, was served with process January 10, 1885. His answer is a general denial, except as to his executorship; a plea of the five year statute of limitation; laches; coverture of his testatrix; *res adjudicata* by reason of a former suit by another creditor of defendant bank at the instance of one Simmons, who recovered a judgment for $2,500 against said executor on fifty shares of the one hundred shares of stock alleged by plaintiff to have belonged to the testatrix, and the payment of said $2,500 to said Simmons in satisfaction of his said judgment.

The allegations in the petition with respect to Heman and Maguire were substantially the same as to Walsh, executor, with the exception of the amount of stock owned by each, in which it is averred that Heman owned eighty-five shares and Maguire ten shares.

Heman was served with process January 7, 1886; admits in his answer his ownership of eighty-five shares of stock, as alleged in the petition, and avers payment to plaintiff Kohn, under a motion for execution, under section 2517, Revised Statutes, of $1,475, like payments to other creditors of defendant bank of $111.80, $55.90, and $515.44, and the ownership by Heman of a judgment against the said bank for the sum of $2,603.30, dated January 3, 1881, which remains unpaid, all of which plaintiffs' admit. The answer further alleges laches on the part of plaintiffs; that plaintiffs' cause of action accrued more than five years before the institution of this suit; that the proceedings under the motion for execution were a bar as against him to this action,

and that the plaintiffs have a complete remedy at law.

Defendant Maguire answered, denying generally all the allegations in plaintiffs' petition except the ownership by him of ten shares of stock in defendant bank, which is admitted. It then contains a plea of the five-year statute of limitation; alleges the bank's indebtedness to him for more than the amount remaining unpaid by him on his stock; set off in a motion by Edward Walsh, a judgment creditor of defendant bank, against him under section 2517, Revised Statutes, in which his set-off was allowed, for more than the amount of his indebtedness to the bank, and the laches of plaintiffs in bringing suit.

Plaintiffs admit the indebtedness of the defendant bank to this defendant for more than the unpaid fifty per cent on his stock, and that his set-off had been allowed him by the court as stated.

As it is not contended by counsel for defendant Walsh that there was laches on the part of plaintiffs in pursuing their remedy in this case against him, it becomes unnecessary to pass upon that question.

It is, however, contended that Mrs. Chambers in fact never held more than fifty shares of the stock of the Butchers and Drovers' Bank, being the shares originally subscribed by her, and as to these shares she has already responded in full on a stockholder's execution against her in a suit brought against her by one Simmons against Walsh, her executor, and that her estate is not liable in this action. Such was the effect of the judgment by the trial court in her favor, which plaintiffs insist was erroneous and should as to her estate be reversed.

It is admitted by counsel for plaintiffs that the facts in defendants' answer in respect to the Simmons suit were proved by defendant, also the coverture of Mrs. Chambers, prior to and during the existence of

the Butchers and Drovers' Bank, but it is also insisted that the evidence showed that she owned one hundred instead of fifty shares. There was evidence tending to support this contention.

The fact that B. M. Chambers on the tenth day of March, 1870, transferred to Mrs. Chambers fifty shares of the stock which he then owned, while she at the same time owned the same number of shares, the surrender of her certificate for the fifty shares which she originally owned, and the issuance in her name thereafter of a certificate of stock for one hundred shares, the reception and receipting for by her in her own name of a dividend on one hundred shares of stock, with other indicia of ownership of somewhat similar significance, are potent in the absence of countervailing facts tending to show that she was the owner of the number of shares for which the certificate was issued. But they are largely explained away, if not in fact entirely overcome by the facts developed in her behalf. Her husband testified that the fifty shares of stock transferred to her by him were without consideration, and for the purpose of reducing the number of shares which he owned, being in excess, as he had been legally advised, of what any one person was allowed to hold of the bank stock in his own name; that Mrs. Chambers knew nothing about it, and that the certificate for the one hundred shares was never delivered to her. Nor was it shown that she knew at the time she received the dividend that it was upon that number of shares.

It is not claimed that there was any authority given by Mrs. Chambers for the transfer of the stock to her before it was done. Nor was there any evidence of any subsequent assent by her, except what occurred at the time she received the dividend.

In *Rodgers v. Bank*, 69 Mo. 560, it was said: "There is no doubt that the evidence to establish a

ratification by the wife of a contract made by the husband, as her agent, must be of an unmistakable character. And it is remarked by Judge Cole in *McClaren v. Hall*, 26 Iowa, 305, that it is necessary, in order to bind her, that the husband should claim to act as her agent." See, also, *Eystra v. Capelle*, 61 Mo. 578, in which it is said, "To establish an agency of the husband on behalf of the wife, the evidence must be cogent and strong and more satisfactory than would be required between persons occupying different positions." Certainly, if the law as thus announced governs in ordinary transactions where a husband assumes to act as the agent for his wife, it should in the case in hand where the transaction was without knowledge on her part, but merely a voluntary act on the part of the husband, in having transferred to her bank stock of which he was then the owner. It would seem that she did not become the owner of the stock, under the circumstances.

But however this may be, the evidence with respect thereto was conflicting, and where such is the case this court will defer to the finding of the trial judge. *Erskine v. Loewenstein*, 82 Mo. 301; *Benne v. Schnecko*, 100 Mo. 250; *Cox v. Cox*, 91 Mo. 71.

The question raised by defendant Heman in his appeal is as to the correctness of the action of the trial court in refusing to allow him the benefit of his judgment for $2,603.30 against the Butchers and Drovers' Bank, which was pleaded by him as a set-off to plaintiffs' cause of action. This ruling seems to have been predicated upon the theory that the amount owing by him and unpaid on his bank stock constituted a trust fund for the benefit of all its creditors, and while it might be offset in a proceeding under the statute hereafter quoted, it could not be in this case. That the amount remaining unpaid on the bank stock owned by

defendant is part of its capital stock is not questioned, but whether it is to be regarded as a trust fund, or within the grasp of a single creditor, under the statutes of this state, and the circumstances developed, are questions deserving the most serious consideration.

By section 737, Revised Statutes, 1879, section 2517, Revised Statutes, 1889, it is provided that: "If any execution shall have been issued against any corporation, and there can not be found any property or effects whereon to levy the same, then such execution may be issued against any of the stockholders to the extent of the amount of the unpaid balance of such stock by him or her owned." It has been uniformly held by the appellate courts of this state, in proceedings had under the statute by motion for execution against a stockholder, that the stockholder is entitled to offset against his liability any demand he may have against the corporation. *Jerman's Adm'r v. Benton*, 79 Mo. 148; *Webber v. Leighton*, 8 Mo. App. 502; *Merchants' Ins. Co. v. Hill*, 12 Mo. App. 149; *Coquard v. Prendergast*, 35 Mo. App. 237. Moreover it has been said: "As the matter now stands, so far as the liability of the stockholders is concerned, it is a race of diligence." *Hannah v. Moberly Bank*, 67 Mo. 678. The doctrine announced in the last case cited finds support in the remarks of ROMBAUER, J., in *Bittner v. Lee*, 25 Mo. App. 559, wherein he says: "The judgment creditor who first proceeds against the delinquent stockholder, obtains a prior claim for the satisfaction of his demand against him, on the theory of superior diligence, which is discussed in the Maine cases. While the correctness of that view has never been approved by any court of final judicature in this state, it has been adopted in some cases, at *nisi prius*, to my own knowledge, and has never been questioned."

The statute and decisions referred to seem to be inconsistent and irreconcilable with the theory that the amount owing the insolvent bank by the holders of its unpaid stock is a trust fund, for the benefit of all its creditors, especially in the absence of some action being taken to wind up its affairs and to adjust its indebtedness by the appointment of a receiver or assignee before proceeding begun by a judgment creditor against the delinquent stockholder, to have his indebtedness applied toward the payment of the debt of the judgment creditor. It would seem to be a question of diligence among creditors, and it is inconceivable how it can be regarded in any other light.

But it is insisted that set-off is not allowable in this action, because, forsooth, it is clear from the evidence that the entire trust fund is a mere trifling amount as compared with the claims of creditors. If a creditor stockholder, in a proceeding against him under the statute by a judgment creditor of an insolvent corporation may set off against such proceeding any valid claim or demand that he has against such incorporation, it is difficult to perceive why he may not do so in a proceeding in equity against him to- accomplish the same end. Equity affords relief that can not be had at law, or in statutory proceedings, and surely the nature of the fund is not changed by the kind of action, or the nature of the proceeding against it. Nor would the offsetting of the demand of Heman against the judgments of plaintiffs be giving him a preference as a stockholder over other creditors any more than a proceeding under the statute would.

It has been said that "the inability of the defendant to avail himself of a legal offset, constitutes one of the recognized grounds upon which equity interposes its relief in favor of the cross-demand." *Jerman's*

*Adm'r v. Benton*, 79 Mo. 148; *Barnes v. McMullins*, 78 Mo. 260.

It is true that it is said in *Schickle v. Watts*, 94 Mo. 410, that when "the company becomes insolvent * * * the creditor stockholder can not appropriate his unpaid balance in exclusive satisfaction of his own claim, for this would be to give him an undue preference altogether inconsistent with the idea of a trust fund for the benefit of all the creditors; and for that reason to be shared by all of them *pari passu*." If it be true, as said in that case, that the creditor stockholder can not appropriate his unpaid balance to the exclusive satisfaction of his own claim for the reason that it would give *him* an undue preference over other creditors, and that this is inconsistent with the idea of a trust fund which should be held for all the creditors, and to be shared by all of them, equally, why would not the same rule apply with equal, if not greater, force to the plaintiffs? And why is it that they may do this very thing in a proceeding against him under the statute and can not in this?

It is true that the petition alleges that plaintiffs bring this suit on their own behalf and on behalf of the other unsatisfied creditors of the defendant bank who shall come in under the same and contribute to the expenses of this suit; and that there are other unsatisfied creditors of said bank, holding unsatisfied judgments against it aggregating more than $100,000. But it does not appear that any other judgment creditors have joined in the suit, or who they are, and it can not be that, in such circumstance, the defendant should be required to pay the full amount remaining unpaid on his stock, get no credit for the amount of his demand against the insolvent bank, and plaintiffs be allowed to collect the amount of his indebtedness to the bank for

the stock purchased by him and apply it to their own exclusive use.

It would simply be compelling one debtor of an insolvent corporation to pay a debt which he owes, while at the same time it is indebted to him in a much larger amount, that another creditor of the same corporation of equal rights may apply the entire amount thus collected to the payment of his own debt to the exclusion of all other creditors. If it is to be considered as a proceeding for the benefit of all the creditors, they should be made parties, that all of the equities, including defendant's, might be adjusted and he be allowed to offset his judgment against the bank, *pro rata* with the demands of all other creditors in proportion to the amount that he would be required to pay on his unpaid stock. There is no fairness or justice in taking from him and giving to another who stands on the same level, and who occupies no advantage ground, or superior equity. If the suit were prosecuted by a receiver for the benefit of all the creditors of the bank, then its property could, in the strictest sense of the term, be regarded as a trust fund and equitably administered as such, but this seems to be a race of diligence unattended by any superior equities in favor of plaintiffs over the defendant. As no other creditor has become a party plaintiff to this proceeding, if this judgment is permitted to stand, it will be to the detriment and expense of defendant, no part of whose judgment will be paid. Such a result would be at war with the theory that the property of an insolvent corporation is a trust fund to be shared *pari passu* by all of its creditors.

What has been said finds support in the opinion of MARTIN, C., in *Jerman's Adm'r v. Benton, supra,* wherein he says:

"The argument of those who deny the equity belonging to the relation of a stockholder as a creditor

starts with the proposition that all capital and obligations for unpaid capital constitute a trust fund for creditors—a proposition which everyone in this country will admit. It is next argued that if a stockholder is permitted to bring forward his claims against the company as an offset against his liability to creditors, he would in this manner obtain payment of his demand in preference to other creditors. Accordingly he is entirely excluded by this course of reasoning as a creditor, and the trust fund in dispute is handed over entirely to the suing creditor, who thereby obtains full preference and satisfaction of his demand, thus obtaining the advantage which was denied to the other creditor, merely because he was a stockholder. It is difficult to perceive on what principle one creditor should be preferred to another. The injustice of the inequality is as apparent when it is suffered by one as by the other. A stockholder has the same right with a stranger to become a creditor of the company. Neither is there anything illegal or reprehensible in the mere fact of his being indebted to the company for unpaid stock. It may be that he has paid all calls which have been made upon him, and that he is not delinquent in any respect. Be this as it may, his unpaid stock constitutes assets of the company in like manner as if paid up, and creditors along with himself may be regarded as contracting with the company on the faith of this unpaid stock, in like manner as if paid up. It constitutes the same amount of assets in whatever form it may be. The defendant, notwithstanding he is a stockholder, has the right as a creditor to a share in this fund. As a creditor, it may be said that he has an equitable lien upon it along with all the other creditors. An enforcement of the summary remedy against it by execution in favor of one creditor alone must result in a destruction of his equitable right and lien. It may

be said that this result follows the enforcement of it as against any other assets of the company.    But in relation to such other assets the creditors stand upon an equality; and the reward of priority is the result of diligence in the one first moving.    But in respect to the assets in the shape of an obligation of the creditor in the capacity of a stockholder, there would seem not to be the same equality in respect to the summary remedy, for the reason that such creditor could not move for an execution against himself; and unless his interest is protected in some manner in the summary proceeding, his undoubted equity in the fund which ought to extinguish or reduce his obligation as a stockholder will be ignored and lost.''

Furthermore plaintiff Kohn had, before the commencement of this action, in a proceeding under the statute quoted, recovered judgment against this defendant on account of his unpaid stock in the sum of $1,475, which, in so far as he is concerned, is a bar to this action.    *Jerman's Adm'r v. Benton, supra; Garrison v. Howe,* 17 N. Y. 458.    He should not be permitted to pursue two different remedies against the same party, on the same cause of action, to accomplish the same end, when the judgment recovered on one of them remains in full force.

What complicates matters still more, and renders it impossible to treat the amounts due by stockholders on their unpaid stock as a trust fund for the benefit of all creditors of the corporation, to be distributed between them *pari passu*, is that defendant Heman, as well as other debtor stockholders, had, before the commencement of this suit, paid various amounts of their indebtedness to individual creditors by reason of proceedings against them under the statute, who are not parties to this suit; and if they were, they could not be compelled to account for what they have received in

excess, if anything, of what would be their *pro rata* shares of all the assets as a trust fund.

Our conclusion is that this proceeding is merely a race between creditors, and if in any case a debtor stockholder should be allowed to set off a judgment owned by him against the insolvent corporation, in a proceeding against him as such stockholder, it ought to be allowed in this case. Equity and good conscience seem to demand it.

Heman owed on his stock at the time the bank closed its doors $4,250. He subsequently paid to judgment creditors of the bank, in proceedings against him under the statute, $2,158.14, leaving a balance due by him on his stock at the time of the commencement of this action of $2,091.86. His judgment against the bank was for $2,603.30, being $511.44 more than his indebtedness to that institution at the time last stated, which, in our opinion, constituted a perfect defense to plaintiff's action.

From what has been said it follows that the court committed error in rendering judgment against defendant Heman in any sum whatever. What has been said as to Heman, with the exception of the judgment against him in favor of Kohn, applies with equal force to defendant Maguire.

The conclusion reached renders it unnecessary to consider other questions raised by counsel in their briefs.

The judgment as to Walsh, executor of Mrs. Chambers, is affirmed. The judgment as to Heman and Maguire is reversed, who shall not be entitled to any claim as creditors in this suit, or to share in the proceeds realized from collections from other defendants herein. All of this division concur.