[No. 1345.    February 4, 1911.]

# ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY ` v.    CITIZENS    TRACTION    AND POWER COMPANY, Appellee.

### SYLLABUS.

1.    Laws 1905, Chapter 97, applies to electric railroads as well as to steam railroads.

2.    Laws 1907, Chapter 97, invests in the court the right to determine and regulate the place and manner of crossing by one railroad of the tracks of another.

Appeal from the District Court for Bernalillo County, before MERRITT C. MECHEM, Associate Justice.    Reversed.

E. W. DOBSON and R. E. TWITCHELL, for Appellant.

The court should have fixed and determined the manner and method of the crossing as required by the laws of New Mexico in case of disagreement between the railway companies concerned.    C. L. 1897, secs. 3804-3925; 3847, sub-sec. 6; Central Pass. Ry. Co. v. Phil. etc. Ry. Co., 52 Atl. 752; People's R. R. Co. v. Syracuse, 22 Abb. N. C. 427; Buffalo, B. & L. R. Co. v. New York, L. E. & W. R. Co., 72 Hun. 583; N. Y. Laws 1882, chap. 676, art. 1, sec. 12; N. Y. Laws 1883, chap. 239; Mayor etc. v. Cowen, 41 Atl. 900; Railroad Co. v. City of Milwaukee, 72 N W. 1118; K. C. etc. Rd. Co. v. Jackson Co. Comrs., 26 Pac. 394.

Counsel fees should not have been taxed as costs. C. L. 1897, secs. 3148-3159; Price v. Garland, 5 N. M. 98; Dedekam v. Vose, 3 Blatchf. 153; Coggill v. Lawrence, 2 Blatchf. 304; Davis v. State, 33 Ga. 531; 5 Enc. P. & P., pp. 110, 115, note 1; Williams v. McDougal, 39 Cal. 80; Constant v. Matteson, 22 Ill. 546; Otoe Co. v. Brown, 16 Neb. 394; Blake v. Blake, 13 Iowa 40; Newel v. Sanford, 13 Iowa 463; Melancon v. Robichaud, 2 Martin, La., 242; Eimer v. Eimer, 47 Ill. 373; Strawn v. Strawn, 46 Ill. 412; Arcambel v. Wiseman, 3 Dallas 306; Oelrichs

v. Spain, 15 Wallace 211; Williamson v. Williamson, 58 Ky., 1 Metc. 303; Springfield v. Hirsch, 29 S. W. 609.

ISAAC BARTH for Appellee.

The lower court properly dissolved the temporary injunction. Pensacola R. Co. v. Sprat, 91 Am. Dec. 747; McGinnis v. Friedman, 17 Pac. 635; Cyc. 756 and cases cited.

The street railway did not violate any right of appellant in crossing appellant's tracks. People v. General C. R. Co., Ill. 129; Conover v. Ruckman, 32 N. J. Eq. 685; Saules v. Freeman, 24 Fla. 209; Chi. & Calumet R. Co. v. Whiting & Chi. St. R. Co., 26 L. R. A. 337; C. B. & Q. R. Co. v. West Chi. I. R. Co., 29 L. R. A. 485; Morris & E. R. Co. v. Newark Pass. R. Co., 51 N. J. Eq. 379; Old Colony R. Co. v. Rockland St. R. R. Co., 161 Mass. 416; A. T. & S. F. Ry. Co. v. General Electric Co., 50 C. C. A. 424; Pa. Co. v. Lake Erie R. Co., 176 Fed. 446; General Electric R. Co., 184 Ill. 588; West Jersey R. Co. v. Camden R. Co., 52 N. J. Eq. 31; S. E. & St. L. R. R. Co. v. Evansville & Mt. Vernon Co., 13 L. R. A., N. S. 918.

The court had no authority to fix and determine the manner and method of the crossing of the tracks of the appellant by the tracks of the appellee. C. L. 1897, secs. 3804-3925; Laws 1905, chap. 79; Front St. Cable R. Co. v. Johnson, 11 L. R. A. 693; State v. Duluth St. R. Co., 57 L. R. A. 63; Massillon Bridge Co. v. Cambria Iron Co., 52 N. E. 192; 36 Cyc. 1349; C. C. Term. R. Co. v. Whiting Hammond E. C. I. R. Co., 26 L. R. A. 337; C. B. & Q. R. Co. v. W. Chi. I. R. Co., 29 L. R. A. 485; N. Y., N. H. & Hartford Co. v. Bridgeport Traction Co., 29 L. R. A. 367.

It was proper for the court to allow attorney's fees upon dissolution of injunction. 22 Cyc. 1006; Chi. Door Co. v. Parks, 79 Ill. App. 679; Bank of Broken Bow v. Freeman, 87 Ill. App. 622; Jamison v. Housten, 21 So. 972; Kelly & Co. v. Meade, 101 N. W. 882, affirmed in 105 N. W. 736.

## STATEMENT OF FACTS.

The Atchison, Topeka and Santa Fe Railway Company, a Kansas corporation, doing business in New Mexico pursuant to the laws thereof, filed its bill of complaint in the court below against the Citizens Traction and Power Company, a corporation organized under the laws of the Territory of New Mexico, seeking to enjoin the latter company from interfering in any manner whatever with the tracks of the complaining company where the same cross the Tijeras road, a public street in the City of Albuquerque, until the court should determine the manner and place of crossing, and praying that the court proceed in the premises to determine and regulate the manner and place of crossing, under the provisions of Section 13, chapter 97, of the Session Laws of the 36th Legislative Assembly of the Territory of New Mexico. The complaint further alleged that the appellant had acquired the lawful right to cross said street in the operation of its railroad; that the appellee had a franchise from the City of Albuquerque, giving it the right to construct, operate and maintain a street-car line upon any and all the streets in the City of Albuquerque, and that under such franchise the appellee was proceeding to lay its tracks across the tracks of appellant.

A temporary injunction was issued. The traction company filed its demurrer, alleging that the complaint did not state facts sufficient to constitute a cause of action. This demurrer was sustained by the court, the temporary writ dissolved, and the Railway Company's bill dismissed with costs, including attorney's fees, assessed against the Railway Company.

## OPINION OF THE COURT.

ROBERTS, J.—Error is assigned questioning the right of the court below to enter judgment against the plaintiff for an attorney's fee of two hundred and fifty dollars, to be included as costs in the case, but, as our conclusions in regard to the other facts in the case necessarily dispose of this contention, we shall not consider it. The questions necessary to be considered in determining this case are: First, Does paragraph 1, of Section 13,

Chapter 97, of the Session Laws of 1905, apply with equal
force to steam, electric and other railways; and, second,
does the right of the court to regulate and determine the
place and manner of crossing under the statute, extend
to railroad crossings upon the streets and highways of in-
corporated cities and towns, where the companies in such
cities and towns are operating under a license or franchise?
Section 13, of Chapter 97, of the Laws of 1905, is as fol-
lows: "Sec. 13. The Court shall have power: 1. To re-
gulate and determine the place and manner of making
connections and crossings, or; of enjoying the common use
mentioned in the foregoing section. 2. To hear and de-
termine all adverse or conflicting claims to the property
sought to be condemned, and of the damages therefor. 3.
To determine the respective rights of different parties
seeking condemnation of the same property." Appellee
claims that the act, of which this section is a part, was
enacted solely for the purpose of providing a method
for the condemnation of property, and that appellant
owned no property right in the street crossed by its tracks,
but simply an easement, which was subject to the rights
of the general public to the use of the street, and appellee,
having a franchise from the city council giving it the right
to lay its tracks in the street, was not required to insti-
tute condemnation proceedings. It is further claimed that
it was not a railroad company within the meaning of the
act, and that the jurisdiction of the court could not be in-
voked. We do not believe that Section 13, of Chapter 97,
supra, should receive the narrow construction contended
for by appellee. While, it is true, the title of the act
relates only to the condemnation of lands and other prop-
erty, and does not refer to railroad crossings, the Organic
Act does not require that the title of an act passed by the
legislature, shall embrace, or express, all the objects or
purposes of the proposed law. Is the appellee company a
railroad within the meaning of the act referred to? The
record before us does not disclose under what law the
appellee company was incorporated. Sections 3846 to 3848,
inclusive, of the Compiled Laws of 1897, provided for the
incorporation of "railroad companies." The act is not

limited to steam railroads, nor does it affirmatively include "street railways." Chapter 79, of the Acts of 1905, of the Legislative Assembly of the Territory of New Mexico, provides for the "formation and government of corporations for mining, manufacturing, industrial and other pursuits." So far as we know, there was no other law, save one of the two above mentioned, under which the appellee company could have been organized. No distinction appears to have been made by the Legislature of New Mexico, between steam railroads and other railroads. The Court of Appeals of the State of Missouri, in Riggs v. Railroad, 120 Mo. App. 335, had before it for consideration a statute of the State of Missouri, which provides, that "every railroad corporation" should be required to fence its right-of-way. It is there held: "Indeed, it is a rule universally approved, that the meaning of the word 'railroad,' when employed in a legislative enactment can only be determined by reference to the context of the act and the manifest intention of the legislature. As said by Mr. Wood in his excellent work on the Law of Railroads, Vol. I (1894), Section 1: 'Thus it has often been a question whether the term would include a street railway. The answer must depend upon the character of the statute and the purpose for which it was provided.' The Supreme Court of Pennsylvania laid down a most reasonable and satisfactory rule on the subject in Gyger v. Railway Co., 136 Pa. St. 104, as follows: 'Railway' and 'railroad' are synonymous and in all ordinary circumstances are to be treated as without distinction, and, when either of them is used in a statute and the context requires that a particular kind of road is intended, that kind will be held to be the subject of the statutory provision. But if the context contains no such indication and either of the words are used in describing the subject matter, the statute will be held applicable to either species of the road embraced within the general sense of the word used." See, also, Mass. Loan & Trust Co. v. Hamilton, 88 Fed. 588. The Missouri Court of Appeals, in Riggs v. Railroad, supra, said: "The word employed in the statute is 'railroad,' which properly applies to either steam or street railroads, and we, therefore, ascertain that the defendant,

although organized as a street railroad company, is operating a railroad in this state, and, therefore, falls within the letter of the statute as well." 3 Elliott on Roads and Streets, Section 1135, says: "Street railways have a right to cross steam railroads. It has been held that the general statutes in force regulating the manner in which steam railways may cross each other are applicable in such cases." In Koken Iron Works v. Robertson Avenue Street Ry. Co., 141 Mo. 228, it was urged that street railroads were not within the intent of the Revised Statutes of 1889, Sec. 6741, giving a lien upon the "roadbed, station houses, depots, bridges, rolling stock, real estate and improvements," of "any railroad company" for which work or labor is done as aforesaid, by said section. The Supreme Court answered the argument by saying, in effect, that much of the statute appeared to be directed against the railroads operated by steam and the steam roads were generally designed by the act, and then said: "But the general terms of the law are also susceptible of application to street railroads, and we find nothing in any part of the enactment to indicate that such application is not intended. When we x x x consider the broad objects sought by such legislation, it seems clear that street railroads were not intended to be exempt from liability to respond to such lien claims in a proper case." See, also, St. Louis Bolt & Iron Co. v. Donahue, 3 Mo. App. 559. "Horse or street railroads, as far as they are employed in cities, serve the same uses and purposes for which railroads are used between distant points in the country; they possess the same essential features as servants of the public; the principal difference being tested by the peculiar character of the territory they are operated in, and the safety, comfort, and wants of the people in that territory." Jerman v. Benton, 79 Mo. 148. The case of Pennsylvania Railway Company v. Braddock Electric Railway Company, decided by the Supreme Court of Pennsylvania, in 1893, 25 Atl. 780, is a very instructive case on this subject. In February, 1891, the supervisors of Braddock township gave their written consent for the construction of defendant's electric railway on the public highway crossing plaintiff's railroad. The electric railway com-

pany was proceeding with the construction of its railroad at grade, and plaintiff brought suit to restrain the crossing at grade. By Act of June 19, 1871, the Legislature had provided, that courts of equity should have power to inquire into alleged injurious acts done by a corporation, etc. The second section of the same act declared: "Where such legal proceedings relate to crossing of lines of railroads by other railroads, it shall be the duty of courts of equity of this commonwealth to ascertain, or define, by their decree the mode of such crossing x x x and if, in the judgment of such court, it is reasonably practicable to avoid a grade crossing, they shall, by their process, prevent a crossing at grade." May 14, 1889, the Legislature passed an act for the incorporation of electric railways, and, by the 18th section of the act, provided: "Any company incorporated under the provisions of this act shall have the right, in its construction, to cross at grade, diagonally or transversely, any railroad operated by steam now or hereafter built." The court held: "Nor do we think that the jurisdiction conferred by the second section of the Act of 1871 was in any manner restricted or limited by the Act of 1889. As we have seen, the latter is entitled, 'An Act to provide for the incorporation and government of street railway companies in this commonwealth.' This title conveys not the slightest intimation of any intention to interfere with the jurisdiction theretofore conferred on courts of equity relating to railroads crossing at grade x x x x. We have no doubt electric railways are within the purview of the Act of 1871. They are certainly within the mischief for which the second section provides a remedy." When we consider the modern development of electric railroads, and the speed at which it is possible to operate cars upon them, which is even greater than that of steam locomotives, and the large passenger cars which are operated upon electric railways, we cannot understand why there should be any distinction between electric railroads and steam railroads. The mere fact that appellee was not incorporated under the provisions of the statute for the incorporation of steam railroads, would not, in our judg-

ment, necessarily exclude the appellee from coming within the provisions of the statute referred to. (See Riggs v. Railroad, supra). We conclude, therefore, that electric railways are included in the statute, and that under Section 13, the court has power, upon proper application, to regulate the manner and place of crossing.

The only remaining question is, as to whether or not the court has this power where the place of crossing is upon a public street, and the electric railway company has a franchise from the city giving it the right to lay its track in the streets. Appellee contends that appellant had no property right in the street where its tracks crossed Tijeras road, therefore, it was not required to institute condemnation proceedings, and that the right to demand compensation for the taking of property must exist in order to give the court jurisdiction to regulate and determine the place and manner of crossing. Prior to the Act of 1905, there was no law in force in the Territory of New Mexico which gave to the court the right to determine the manner and place of making connections and crossings between railroads. The right to cross was exercised under the general condemnation statutes, and there was no method by which the rights of the public could be protected and the safety of the passengers secured. A railroad could arbitrarily force its tracks, at grade, across the tracks of another railroad company, subject, of course, to the compensation which it was required to pay the first railroad company, and the general equity power of the court. With the modern development of railroads of all kinds, shall we conclude that in 1905 the legislative assembly, in enacting the provision in question, had in mind only the crossing of a railroad on private property, and that it did not intend to make any provision whatever for the crossing of tracks, where the first railroad company had only an easement in a public street or highway? To so hold would leave the determination of the manner and place of making the crossing wholly with the second railroad company, without any consideration as to the rights of the first railroad company, or the safety of the general public. We believe that Chapter 97,

should receive a broader and more general construction, and that the legislature meant to invest in the court the right to determine and regulate the place and manner of crossing by one railroad of the tracks of another, not only for the protection of the rights of the first railroad company, but for the protection of the lives of the traveling public using both roads, and the court has the right to prescribe such system and safeguards as will, in its judgment, fully protect these rights. In the court both railroad companies have the right to present all questions to the court for its consideration. The court, after hearing the witnesses and the testimony of experts, can fix the rights of the parties and fully protect them, and, at the same time, safeguard the interests of the public.

In the case of Pennsylvania Railroad Company v. Braddock Electric Railway, supra, the court held, that even though the Electric Railway Company had a license from the borough, it was, nevertheless, the duty of the court to regulate the crossing.

It is to be presumed, that where a crossing is mutually agreed upon between the railroad companies, ample provision will be made for the safety of the passengers on both railroads. In fact, it would be to the interest of both railroads to see that such provisions were made for the protection of human life, because, by so doing, they would relieve themselves from loss and damages.

The manner and place of crossing the railroad company's tracks, under the provisions of the statutes, was a proper subject for the consideration and determination of the court. Central Passenger Railway Co. v. Philadelphia, etc. Railway Co., 52 Atl. 752; Mayor etc. v. Cowen, 41 Atl. 900; Railroad Company of Syracuse v. Syracuse, 22 Abb. N. C. 427. The cases cited by appellee in its brief, holding that the street railway company had the right to lay its tracks across the tracks of the steam railroad company, and that by so doing it did not violate any right of the appellant, are not in point, for the reason that statutory power had not been conferred upon the court to fix and regulate the manner of crossing. From these conclusions, it necessarily follows that the court erred in sutaining the

demurrer to appellant's complaint, and the cause is, therefore, reversed with instructions to overrule the demurrer.

Frank W. Parker, A. J., and Edward R. Wright, A. J., dissent.